UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SCOTT A. SPAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-CV-722 JD |
| | ) | |
| CITY OF ELKHART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is a civil rights case in which the Plaintiff, Scott A. Spake, alleges that on December 14, 2011, he was unlawfully stopped for a traffic violation and arrested without probable cause. Although officers at the scene assert that the car smelled of marijuana and Spake appeared under the influence, Spake had not ingested any alcohol or drugs that evening and the toxicology report from Spake's blood draw showed that he was not under the influence of illegal substances, including marijuana. Spake's three charges for operating under the influence were ultimately dropped and his license was reinstated after being suspended for about six months.

In his complaint, Spake asserts a host of state and federal claims, none of which are separately denoted so as to identify the particular facts supporting each legal claim. (DE 1.) The remaining defendants[1] have now moved for summary judgment on his claims including the City of Elkhart and Elkhart Police Department who contend that Spake suffered no constitutional injury and did not meet the requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (DE 40.) While Spake appears to have initially pled numerous claims, in responding to defendants' requested summary judgment Spake acknowledges that his claims are premised only

---

[1] Individual officers Oldroyd, Wrathell, Hupp, and McHenry, along with Elkhart County and the Elkhart County Sheriff's Department, have been previously dismissed as defendants from this case. (DE 34; DE 42.)

on two events. Specifically, plaintiff's counsel has conceded that all of Spake's claims "are based on two separate events: 1) the stopping of his vehicle without probable cause, and 2) his subsequent arrest for operating while intoxicated without probable cause." (DE 56 at 6.) Accordingly, should probable cause support the initial stop and subsequent arrest, then summary judgment is appropriate in this case.

Because Officers Faigh, Miller, and Schroth had probable cause to stop Spake for a traffic infraction, Officer Ray had probable cause to arrest Spake for driving while intoxicated, and there is in turn no basis for liability under *Monell*, the defendants' motion for summary judgment is GRANTED as to all remaining parties.

## I. FACTUAL BACKGROUND

As acknowledged by plaintiff, summary judgment rests on: (1) whether Officers Faigh and Miller could have reasonably believed Spake failed to stop his vehicle before entering a "sidewalk", thereby giving them probable cause to notify Officer Schroth to stop Spake for committing a traffic violation, *see* Ind. Code § 9-21-8-42 (requiring that a person who "drives a vehicle within a business or residence district that is emerging from an alley, a driveway, or a building shall stop the vehicle immediately before driving onto a sidewalk or into the sidewalk area extending across an alleyway or a private driveway"); Ind. Code 9-13-2-167 (defining "sidewalk" to mean "the part of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for the use of pedestrians"); and (2) whether Corporal Ray had probable cause to arrest Spake for driving under the influence of marijuana. As to the first inquiry, Spake argues that upon exiting the gas station no sidewalk was evident, and therefore the officers couldn't have reasonably believed that he violated Indiana Code § 9-21-8-42. With respect to the second inquiry, Spake attempts to explain away some of the indicators of

his impairment in an attempt to undermine the officer's basis for probable cause to support his arrest. The Court now considers these issues in light of the facts viewed in Spake's favor.

On the night of December 14, 2011, Spake and his fiancé Janet Medina stopped at the Energy Oil gas station in Elkhart, Indiana between 9:00 p.m. and 9:20 p.m. (DE 40-1, Depo. of Scott Spake, p. 16-18.) After paying for his gas, Spake exited the gas station through the gas station's driveway and turned right onto Main Street (heading south).[2] (DE 40-1, p. 18-22, 86.) Spake admits that he did not completely stop at any point when he exited the gas station and turned onto Main Street. (DE 40-1, p. 22.) During his deposition, Spake identified various photographs taken of the scene which accurately depicted the driveways to the Energy Oil gas station (DE's 56-2, 56-3, 56-4, 56-11, 56-12, 56-13, 56-14 (attached as Exhibit A to this order)), and it was Spake's opinion that neither driveway contained a sidewalk or signage that required him to stop before exiting. (DE 40-1, p. 20-22, 55-56, 60-64.)

Because the area was having problems with crime, especially drug activity, Sergeant Karl Miller[3] and Corporal Chris Faigh[4] were conducting surveillance of the Energy Oil gas station in an unmarked vehicle approximately twenty-five to thirty yards away and in a lighted area. (DE 40-2, Depo. of Sergeant Miller, p. 15-17, 31-32, 34, 54-55; DE 40-4, Depo. of Corporal Faigh, p.

---

[2] The parties do not contest that Spake's exit from the gas station was via a private driveway for purposes of Indiana Code § 9-21-8-42. *See* Ind. Code 9-13-2-135 ("'Private driveway' means a way or place in private ownership that is used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons.").

[3] At the time of the incident, Sergeant Miller had been employed with the Elkhart Police Department for approximately eleven years, and his training consisted of those things learned at the Indiana Law Enforcement Academy, as well as identifying the smell of marijuana. (DE 40-2, p. 7-9, 53-54.)

[4] Corporal Faigh has worked for the Elkhart Police Department since late 2006 after receiving his training at the Indiana Law Enforcement Academy, and he also had training in and experience with identifying the smell of marijuana. (DE 40-4, p. 8-9, 80.)

17-19, 25, 27-28, 50.) Sergeant Miller and Corporal Faigh observed Spake's vehicle leave the

gas station and fail to stop upon crossing what they believed to be a sidewalk. (DE 40-2, p. 18,

21, 25-27, 35, 52-53, 61-62; DE 40-4, p. 17-20, 77.) During Sergeant Miller's deposition, he

described the scene and indicated that the sidewalk visibly starts and ends on each side of the

driveways to the gas station, and thus, it necessarily continues through the driveways. (DE 40-2,

p. 26-27, 51-53, 55, 58; DE 40-3, Exhibit F.) Corporal Faigh also described the sidewalk during

his deposition as being one that "goes around the business" and he explained that a pedestrian

using the sidewalk would have to cross the driveways in order to continue on the sidewalk. (DE

40-4, p. 18, 39, 41; DE 40-5, Exhibit 5.) Miller and Faigh believed that cars coming out of the

parking lot where Spake drove were required to stop short of the sidewalk pursuant to Indiana

Code § 9-21-8-42. (DE 40-2, p. 52-53, 61-62; DE 40-4, p. 21, 37, 76-77; DE 56-16, Exhibit 10.)

But because Miller and Faigh were in an unmarked vehicle policy did not permit them to initiate

a traffic stop, so they radioed for a marked unit to stop Spake's white Dodge Magnum for failing

to come to a complete stop before crossing a sidewalk area onto a roadway. (DE 40-2, p. 18-21,

27; DE 40-4, p. 20-22, 35, 52; DE 40-6, Depo. of Sergeant Schroth, p. 12-13, 15-16, 36.)

So after exiting the gas station, Spake drove for a few blocks and was pulled over by

Sergeant Brian Schroth[5] who had been informed by Officers Faigh and Miller that there was

probable cause to initiate the stop. (DE 40-1, p. 22; DE 40-2, p. 21-23, 26-28; DE 40-6, p. 12-13,

15-16, 36.) Spake realized that he was being pulled over because he saw the lights in the mirror.

(DE 40-1, p. 22.) Corporal Schroth then approached Spake's car, along with Sergeant Miller

---

[5] At the time, Sergeant Schroth had been employed with the Elkhart Police Department for over 14 years, he was ranked a corporal, and he was patrolling the area in a marked squad car while dressed in full uniform. (DE 40-6, p. 7-12.)

(who walked behind Schroth) and Corporal Faigh (who approached the passenger side). (DE 40-1, p. 23; DE 40-2, p. 29, 36-37; DE 40-4, p. 53, 55.)

Corporal Schroth testified during his deposition that upon making contact with Spake, he recognized the odor of marijuana emitting from the driver's side window—as did Sergeant Miller—and so Schroth asked Spake to step out of the vehicle. (DE 40-2, p. 37-39, 54, 61; DE 40-4, p. 55-56; DE 40-6, p. 17-18, 23.) Corporal Faigh also smelled marijuana coming from the vehicle, recalling that the passenger window was likely cracked open. (DE 40-4, p. 55-57.)  In fact, Spake heard the officers saying that they smelled marijuana in the car. (DE 40-2, p. 26.)

Spake cooperated by exiting the car and after an outer clothing pat down of Spake, Corporal Schroth requested a drug recognition expert to come to the scene. (DE 40-6, p. 19-20.) Once Corporal Jason Ray[6] responded, he was informed by Corporal Schroth that Spake's vehicle had a strong odor of marijuana and Spake could possibly be under the influence of marijuana. (DE 40-8, Depo. of Jason Ray, p. 20, 22.) Corporal Ray conducted further inquiry with Spake at that time.[7] *Id.*

---

[6] Corporal Jason Ray has been an officer since early 2000, serving the Elkhart Police Department since August 2006. (DE 40-8, p. 7-8.)  He is a certified drug recognition examiner (DRE) and breath test operator, and he is certified in the National Highway Traffic Safety Administration's standardized field sobriety testing through the Indiana School of Toxicology. (DE 40-8, p. 7-8, 10, 37, 42.) Corporal Ray became a certified DRE through an 11 day course with the Indianapolis Metropolitan Police Department Academy, where he was taught the testing process used to determine the type of drug a person is under the influence of. (*Id.*, p. 11-12.) On December 14, 2011, Corporal Ray was supervised by certified DRE Sergeant McHenry while conducting the drug recognition examination because prior to receiving "full certification" Corporal Ray had to be supervised by a certified DRE individual for his first 12 drug recognition exams. (*Id.*, p. 13.)

[7] In the meantime, Sergeant Jack Oldroyd had also been called to the scene to have his K-9 conduct a sniff test for drugs on Spake's vehicle. (DE 40-2, p. 39.)  However, Spake has dismissed Sergeant Oldroyd from the action with prejudice. (DE 42.)  Ultimately, the officers did not find any drugs (DE 40-2, p. 40), and Spake is not now pursuing a claim based on any unlawful search.

Corporal Ray read Spake his Miranda rights and performed field sobriety tests at the scene. (DE 40-1, p. 30; DE 40-8, p. 23-25, 27-29.) Spake's sworn testimony established that before Ray gave him these tests, he was asked if there was anything that would inhibit his performance, but Spake offered no such information. (DE 40-1, p. 30.) Although Spake contends that he failed to perform the tests properly because he was cold and wearing dress shoes, along with the inclement weather (sleeting) and uneven road surface, he did not tell any officer that he could not perform the tests because of these circumstances. (DE 40-1, p. 30-31, 25, 103.) Spake figured the officers knew of the conditions because they were standing out there too. (DE 40-1, p. 31.)

During his deposition, Spake admitted that he probably did not perform the majority of the field sobriety tests properly—specifically, he was not able to perform the heel to toe test or one foot test. (DE 40-1, p. 31-32, 96-97.) Although Spake's girlfriend thought Spake performed the tests correctly (DE 56-7, Depo. of Janet Medina, p. 24-25), Spake admitted that an officer watching him perform the tests would have observed him failing the tests. (DE 40-1, p. 31-32.) While Corporal Ray confirmed observing Spake's wearing black loafers and obviously knew that it was cold and dark, he still believed Spake had failed the walk/turn and the one leg stand tests. (DE 40-8, p. 21, 23-24, 32.) At his deposition, Corporal Ray acknowledged that while a person standing in the "cold, sleety, rainy, dark night, . . . for over 40 minutes" may be affected in performing the sobriety tests, he did not believe that was the case with respect to Spake. (DE 40-8, p. 61-62.)

Although Spake passed the gaze nystagmus test, Corporal Ray explained that marijuana does not cause nystagmus and so the test is not an indicator for the use of marijuana. (DE 40-8, p. 67-68.) In addition, Corporal Ray smelt the odor of marijuana coming from Spake's clothing

during the testing, and he observed that Spake's eyes were watery with red conjunctiva, which appeared to him to be signs of impairment. (DE 40-8, p. 22-25, 30, 34-35, 62.) Spake admitted during his deposition that on the evening of his arrest, he could have had bloodshot (or red) and watery eyes. (DE 40-1, p. 69, 93, 104-105.)

Despite that Spake and Medina denied his use of alcohol or illegal drugs, Corporal Ray found that Spake showed signs of impairment based on the field sobriety testing and his observations, and so he administered a portable breath test to rule out alcohol—which indicated no presence of alcohol.[8] (DE 40-1, p. 23-25; DE 40-8, p. 26-27, 30-31, 40, 45-50; DE 56-7, p. 22.) At this point, Spake was placed in handcuffs and taken to the police station where Corporal Ray conducted more testing. (DE 40-1, p. 33-34, 73; DE 40-4, p. 66-67, 77-79; DE 40-8, p. 41.) Spake testified in his deposition that no inappropriate force was used by any officer at the scene. (DE 40-1, p. 32.)

At the station, Corporal Ray conducted further field sobriety testing by observing Spake for twenty minutes and giving him a chemical breath test which ruled out alcohol impairment. (DE 40-1, 33-34, 37; DE 40-8, p. 42-44; DE 40-9 DRE report.) He also conducted a pupil test and tests similar to those performed at the scene.[9] *Id.* Spake believes that he "did better" in performing the field sobriety tests at the station, although he was still cold and wearing the same shoes as he was at the scene. (DE 40-1, p. 34.) However, Spake admitted that he did not really know if he passed the tests or not. (DE 40-1, p. 36.) Corporal Ray documented his observations including the fact that Spake had reddened conjunctiva which he associated with signs of

---

[8] Spake believed it was the officer who pulled him over who gave him the portable breath test after he exited the car. (DE 40-1, p. 23-25.) But no one disputes the result.

[9] The standardized field sobriety testing was conducted at the police department as part of the drug recognition examination, which Sergeant McHenry supervised. (DE 40-8, p. 43-44.)

impairment rather than lesser symptoms caused by sleepiness or cold. (DE 40-8, 68-69; DE 40-9 DRE report.) Based upon the totality of all of the tests given and the impairment that he observed at the scene, Corporal Ray reported that he believed Spake was under the influence of cannabis and unable to operate a vehicle safely. (DE 40-8 and DE 56-6, p. 40, 44, 50, 53, 59-62, 73-74; DE 40-9 DRE report; DE 56-10.)

Spake was then taken by Corporal Schroth to the hospital for a blood draw at Corporal Ray's request (in order to complete the final step of the DRE process), to which Spake consented. (DE 40-1, p. 36, l. 24-p. 37, l. 17; DE 40-6, p. 27-29; DE 40-8, p. 50-53.) Spake was ultimately booked in jail for one day and charged with operating under the influence. (DE 40-1, p. 9, 37-38, 42, 77.)

According to Corporal Ray, it appears that the Indiana Department of Toxicology did not receive the kit until May 7, 2012, and the uncontested May 24 test results (which included testing for marijuana) were negative. (DE 40-8, p. 55; DE 56-9.) Spake's charges were dismissed. (DE 40-1, p. 9, 37-38, 42, 77.) And although Sergeant Miller believed that he had written Spake a citation for his traffic infraction (DE 40-2, p. 33, 44, 46), Spake indicated that he never received a ticket. (DE 56-1, p. 43, 79, 92-93.)

## II. STANDARD OF REVIEW

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Kerri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006); *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

### III. DISCUSSION

Spake made claims against Officers Faigh, Miller, Schroth, and Ray in both their individual and official capacities, and alleges that the City of Elkhart and Elkhart Police Department are responsible for their conduct. The Court addresses the individual and official capacity claims against the officers first and then addresses the *Monell* claims.

Spake's federal claims arise under 42 U.S.C. § 1983, which provides a cause of action against any person who, while acting under color of state law, deprives an individual "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 878 (7th Cir. 2012). No one contests that the defendants were acting under color of state law, rather the contested issue is whether the officers deprived Spake of his rights under the Fourth Amendment to be free from "unreasonable searches and seizures," U.S. Const. amend. IV, when they stopped his car and arrested him.

Spake also argues that the same facts support a claim for illegal seizure under Article I, § 11 of the Indiana Constitution. Though Indiana analyzes its search and seizure provision in a way that is distinct from the Fourth Amendment analysis, *see Linke v. Northwestern School Corp.*, 763 N.E.2d 972, 977 (Ind. 2002), both parties rely on a Fourth Amendment probable cause determination. Moreover, Spake seeks only monetary damages in this lawsuit (DE 1, ¶¶ 1, 40, 46, 52, 64), and the Indiana Supreme Court has recognized that "[t]here is no explicit language in the Indiana Constitution providing any specific remedy for violations of constitutional rights." *Cantrell v. Morris*, 849 N.E.2d 488, 499 (Ind. 2006); *accord City of Indianapolis v. Cox*, 20 N.E.3d 201, 212 (Ind. Ct. App. 2014) ("[N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution.") (quoting *Smith v. Ind. Dep't. of Corr.*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007)). Thus, the Court's analysis here focuses on the Fourth Amendment, and the parties agree that the existence of probable cause[10] would bar any of Spake's claims.

## A.      Probable Cause for the Stop

While the Fourth Amendment prohibits unreasonable searches and seizures, the existence of probable cause renders both traffic stops and resulting warrantless arrests permissible. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1114 (7th Cir. 2013). "Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id*. (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). "Probable cause . . . 'is a fluid concept that relies

---

[10] While it is true that only reasonable suspicion was necessary to initially stop Spake, *see Huff v. Reichert,* 744 F.3d 999, 1004 (7th Cir. 2014); *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011), defendants waived such a contention by arguing only that probable cause existed for the traffic stop and resulting arrest. (DE 40, p. 15-19.)

on the common-sense judgment of the officers based on the totality of the circumstances.'" *Jones*, 737 F.3d at 1114; *Thayer v. Chiczewski*, 705 F.3d 237, 246 (quoting *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006)). We objectively "step into the shoes of a reasonable person in the position of the officer," and consider the facts known to the officer at the time. *Jones*, 737 F.3d at 1114 (quoting *Thayer*, 705 F.3d at 246). We do not consider the subjective motivations of the officer. *Id.* (citing *Thayer*, 705 F.3d at 246). When a police officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports the stop. *Id.* (citing *United States v. Garcia–Garcia*, 633 F.3d at 612; *Whren v. United States*, 517 U.S. 806, 819 (1996)).

To determine whether probable cause existed, the Court considers the law allegedly violated. *See e.g., Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006). Here, the defendants claim that Spake was stopped for violating Indiana Code § 9-21-8-42 requiring that a person who "drives a vehicle within a business or residence district that is emerging from an alley, a driveway, or a building shall stop the vehicle immediately before driving onto a sidewalk or into the sidewalk area extending across an alleyway or a private driveway." In turn, Indiana Code § 9-13-2-167 defines "sidewalk" to mean "the part of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for the use of pedestrians."

Spake has provided various photographs which accurately depict the area he drove through to get from the gas station to Main Street and have been attached to this order as Exhibit A. (DE's 56-2, 56-3, 56-4, 56-11, 56-12, 56-13, 56-14.) Based on these photographs, Spake argues that it is a disputed question of material fact whether the area he drove through constitutes a sidewalk. Specifically, Spake asserts that while "[t]he sidewalk and sidewalk area are clearly delineated by the curb cuts surrounding the ingress and egress of the gas station[,] [n]o

reasonable person could identify a sidewalk or sidewalk area within the driveway of the gas station." (DE 56 at 7.)  As a result, Spake contends that no reasonable officer could believe he had violated Indiana Code § 9-21-8-42 when he exited the gas station. *Id.*

The Court disagrees.  It is uncontested that the sidewalk at issue continues on both the south and north sides of each driveway and along Main Street.  And merely because the sidewalk is interceded by the gas station's paved driveways, Spake is unable to dispute the fact that this is an area which remains between the lateral lines of Main Street and the adjacent property lines of the Energy Oil gas station and is intended for the safe use by pedestrians moving alongside Main Street, consistent with Indiana Code § 9-13-2-167. *See e.g., State v. Scharff,* 284 P.3d 447 (N.M. Ct. App. 2012) (noting that the general purpose behind New Mexico's code provision requiring (in relevant part) a vehicle to stop before emerging from a driveway onto a sidewalk was to protect pedestrians from vehicles emerging from ingress and egress points).  In fact, the photographs Spake relies on, as attached to this order, indisputably show that if pedestrians were using the clearly demarcated sidewalk extending along Main Street and immediately north or south of the gas station's driveways, then pedestrians would necessarily travel directly across the driveways thereby remaining on the sidewalk.  Thus, the gas station's driveways contained sidewalk areas, and this is exactly what is meant by a sidewalk that "extend[s] across . . . a private driveway," as stated in Indiana Code § 9-21-8-42.

More importantly, the defendants have established that for the purpose of summary judgment there is no factual dispute that would call into question Sergeant Miller and Corporal Faigh's reasonable belief that the driveway contained a sidewalk and Spake had violated Indiana Code § 9-21-8-42. *See United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (courts "need only inquire whether the officer had probable cause to believe that a traffic violation occurred, . .

. not whether [the driver] actually was tailgating") (internal citation omitted); *United States v. Cashman*, 216 F.3d 582, 586–87 (7th Cir. 2000) (officer's estimate of the fact undergirding a violation does not need to be "perfectly accurate;" pertinent question is whether it was reasonable for the officer to believe that a violation had occurred). Here, Spake admittedly did not stop upon exiting the gas station, and Spake's failure to stop was actually observed by both Sergeant Miller and Corporal Faigh who were conducting surveillance on that location. Moreover, the photographs demonstrate that it was reasonable for the officers to perceive that the sidewalk, which ran alongside Main Street, extended through the private driveways of the gas station, thereby reasonably intimating that Spake was required to stop his vehicle prior to entering the sidewalk area. Accordingly, Sergeant Miller and Corporal Faigh had probable cause to effectuate a stop based on their reasonable belief that Spake had committed a traffic violation. *Whren*, 517 U.S. at 810; *Muriel*, 418 F.3d at 724 ("Probable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.'") (quoting *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)); *see also Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013) ("It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle."). And Spake does not dispute the fact that Miller and Faigh's observations were then communicated to Corporal Schroth,[11] who as a consequence of that communication, had probable cause to pull Spake's vehicle over. *See United States v. Harris*, 585 F.3d 394, 401 (7th Cir. 2009) (reasoning that the content of this communication at least included information about the Ford Excursion and the need to conduct a

---

[11] In fact, Spake's complaint specifically alleged that: "Officer Schroth executed a traffic stop on Spake based upon information that Mr. Spake did not stop prior to a sidewalk." (DE 1, ¶ 15.)

traffic stop, which alone would be enough to justify application of the collective knowledge doctrine, as the officers were acting based on another officer's request for a traffic stop rather than their own suspicions).

Because even viewing the record in Spake's favor supports the conclusion that the defendants had probable cause to stop Spake for committing a traffic violation, summary judgment shall be granted on this ground.

## B.      Probable Cause for the Arrest

Spake's next contention is that even "[a]ssuming the stop of Spake was legal, Defendant Ray violated Spake's rights by arresting him without probable cause." (Tr. 56.)

An arrest is reasonable if it is based on probable cause that the individual has committed an offense, so to succeed on this claim, Spake must show a question of fact with respect to whether the officers had probable cause for his arrest. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) ("In order for [the plaintiff] to prevail on his § 1983 false arrest claim, he must show that probable cause for his arrest was lacking."); *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause.").

However, once officers had probable cause to conduct the traffic stop of Spake for committing a traffic violation, they could then arrest Spake without violating his Fourth Amendment rights. *See Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002) ("A person arrested for an offense punishable only by a fine typically is given a citation (a 'ticket') and released, but *Atwater* holds that the Constitution allows the police to place the person in custody and take him to be booked.")); *Ray v. City of Chicago*, 629 F.3d 660, 663 (7th Cir. 2011) (noting that so long as a police officer has probable cause to believe that

a person has committed a crime (in this case, the failure to operate a vehicle without the headlights being turned on), then it is not constitutionally relevant whether the person was arrested on charges (here, the possession of a controlled substance) for which there was no probable cause.). Thus, the Court need not address whether the officers had probable cause to arrest Spake for operating while intoxicated.

However, the Court notes that the undisputed facts in the record clearly show that despite Spake's contention to the contrary, Corporal Ray had a reasonable basis to conclude that Spake was under the influence of marijuana, and thus had probable cause to arrest Spake for operating while intoxicated.

Spake argues that the totality of the circumstances fail to support a finding of probable cause, because the "only basis from which Defendant Ray could justify his probable cause for arrest for Operating while Intoxicated was on Spake's alleged bloodshot eyes, his alleged failure of the field sobriety test, and the alleged smell of marijuana of his clothing." (DE 56 at 9.)  While Spake characterizes these facts as being "alleged," he has not provided evidence rebutting them. Rather, Spake believes that the *other* circumstances—such as, his being cooperative, passing some field sobriety tests, denying use of marijuana, as well as there being no physical evidence of marijuana use (DE 56 at 8-9)—reveal that he was not intoxicated.  But Spake offers no case law to support his position that the undisputed facts are somehow insufficient to establish probable cause under the circumstances of this case.

Again, Spake does not contest the fact that Corporal Ray smelled marijuana coming from Spake's clothing. This evidence was consistent with Corporal Ray's knowledge that other officers had reported smelling a strong odor of marijuana coming from Spake's car.  And although Spake denied having ingested any marijuana or other controlled substances, he

admitted that on the evening of his arrest he could have had bloodshot and watery eyes (a potential indicator to police of the use of marijuana) and that an officer could have reasonably concluded he failed the sobriety tests at the scene. Spake never told Corporal Ray that he was having trouble performing the sobriety tests because of his shoes and the weather—things that Spake presumed Corporal Ray was aware of given their obviousness. In fact, Corporal Ray acknowledged that he had accounted for the circumstances under which Spake performed the sobriety tests, and he still believed Spake showed signs of being under the influence of marijuana. The mere fact that Spake passed some sobriety field tests, such as the gaze nystagmus test, does not negate probable cause, at least in this case. *See e.g., Seiser v. City of Chicago*, 762 F.3d 647, 656 (7th Cir. 2014) (the fact that an individual is able to complete one or more field sobriety tests successfully does not negate probable cause when other circumstances give rise to a reasonable belief that the individual is intoxicated). Additionally, even after Spake was taken to the jail for close observation and completion of the drug recognition examination, Spake continued to present with signs of impairment, such as having reddened conjunctiva, being off step, repeatedly missing the tip of his nose, and swaying, none of which are contested. All of this is to say that Spake is unable to rebut that Corporal Ray had probable cause to arrest Spake for driving under the influence of marijuana. *See, e.g., Gutierrez v. Kermon*, 722 F.3d 1003, 1011–12 (7th Cir. 2013) (applying Indiana law and noting "common indicia of intoxication" including "watery or bloodshot eyes," "the odor of alcohol on the breath," "unsteady balance," and "failure of field sobriety tests"). And although Spake's blood test results came back negative and his criminal charges were ultimately dismissed, these facts were not within the officer's knowledge at the time of the arrest and therefore do not call into question the probable cause determination. *See Ochana v. Flores*, 347 F.3d 266, 272 (7th Cir. 2003).

Because the officers had probable cause for both the traffic stop and the arrest (and Spake acknowledges that his claims are premised on the lack of probable cause for these two events), Spake's claims are barred. There is therefore no remaining claim holding the officers liable in their official or individual capacities. And because the record leaves no doubt that there was probable cause for the traffic stop and the arrest, it is well established that without a violation of constitutional rights the City and its police department[12] cannot be liable under § 1983. *Jones*, 737 F.3d at 1113.

## IV.  CONCLUSION

In this lawsuit, Spake sought monetary damages based on his complaint's extensive perfunctory list of state and federal claims. But because the two events upon which Spake's claims rest—the traffic stop and his arrest for operating while intoxicated—were supported by the officers' probable cause, summary judgment must be granted in favor of all of the remaining defendants on all of Spake's claims. Accordingly, the defendants' motion for summary judgment is GRANTED and the Clerk is instructed to terminate this case.

SO ORDERED.

ENTERED:  March 3, 2015

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court

---

[12] It isn't likely that the police department even had the capacity to sue or be sued under the Indiana statutory scheme. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citations omitted).

# EXHIBIT A



DEFENDANT'S
EXHIBIT NO. A
FOR IDENTIFICATION
NO. 3/4/11
DATE:
RPTR: M
PENGAD 800-631-6989



DEFENDANT'S
EXHIBIT NO. B
FOR IDENTIFICATION
3/4/14
DATE:                RPTR: DM
PENGAD 800-631-6989



DEFENDANT'S
EXHIBIT NO. C
FOR IDENTIFICATION
RPTR: KM
DATE: 3/14/14
PENGAD 800-631-6989



PLAINTIFF'S
EXHIBIT NO. 26
FOR IDENTIFICATION
DATE: 3/4/14
RPTR: DM
PENGAD 800-631-6989



PLAINTIFF'S
EXHIBIT NO. 27
FOR IDENTIFICATION
DATE: 3/4/14
RPTR: [signature]
PENGAD 800-631-6989



PLAINTIFF'S
EXHIBIT NO. 28
FOR IDENTIFICATION
DATE: 3/4/14
PENGAD 800-631-6989



PLAINTIFF'S
EXHIBIT NO. 29
FOR IDENTIFICATION
DATE 3/11/9
RPTR
PENGAD 800-631-6989